# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 98 C 4526 | **DATE** | 9/7/2000 |
| **CASE TITLE** | Walters vs. Central States Coca Cola | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. For the reasons set forth on the attached order, Central States' motion for summary judgment is granted as to Counts 1,2, and 4 but is denied as to Count 3 (Walters' retaliation claim). Central States' motion to strike Walters' statement of undisputed facts is also denied. The final pretrial order in conformity with Local Rule 16.1 remains due on September 30, 2000, and the case remains set for trial on 1/8/01. A final pretrial conference date will be set in due course.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | SEP 10 2000 date docketed | | |
| ✓ | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | FILED FOR DOCKETING | | |
| OR | courtroom deputy's initials | 00 SEP -7 PM 5: 06 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PATRICIA WALTERS | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 98 C 4526 |
| | ) | |
| CENTRAL STATES COCA-COLA | ) | |
| BOTTLING COMPANY, a | ) | |
| division of Coca-Cola Enterprises, | ) | |
| | ) | |
| Defendant. | ) | |

DOCKETED
SEP 10 2001

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Patricia Walters worked for Central States Coca-Cola Bottling Company as a Cold Drink Account Manager at the company's Peru, Illinois Sales Center. She was hired in 1995. On June 2, 1998, she filed an EEOC charge of discrimination, alleging disparate treatment based on sex. In July 1998, she filed this lawsuit. On September 2, 1999, Central States fired Walters, after which she filed an amended complaint: Count 1 alleges *quid pro quo* sexual harassment in violation of 42 U.S.C. §2000e-2(a)(1); Count 2 is a claim under the Equal Pay Act, 29 U.S.C. §206(d); Count 3 alleges retaliation under 42 U.S.C. §2000e-3(a); and Count 4 is a common law claim for intentional infliction of emotional distress. Central States has moved for summary judgment on all counts.

### COUNT 1
### Sexual Harassment

*Quid pro quo* sexual harassment occurs when unwelcome sexual advances or requests for

1

sexual favors are made explicitly or implicitly a term or condition of employment, or where the submission to or rejection of such conduct is used as the basis for an adverse employment action. *See* 29 C.F.R. §1604.11(a); *Bryson v. Chicago State University*, 96 F.3d 912, 915 (7th Cir. 1996). In order to establish such a claim, Walters must prove: (1) she is a member of a protected group, (2) she was subjected to unwelcome sexual advances, (3) the harassment was sexually motivated, (4) her reaction to her supervisor's advances affected a tangible aspect of her employment, and (5) respondeat superior has been established. *Bryson*, 96 F.3d at 915.

Walters says that in September 1996, she asked Brian Brander, the Peru Sales Center Manger, about a possible promotion, and he responded, "well that depends on the temperature up here." After she replied it's "cold right now," he allegedly responded "you'd better warm it up." Walters says Brander was propositioning her, but because she refused his advance, she was passed over for promotions in January-February 1997 and again in December 1997.

In January-February 1997,[1] Walters interviewed for the position of Cold Drink District Sales Manager position but did not get it. Actually no one did; the position was "rescinded" and a new position was posted, that of Home Market District Sales Manager. A man, Mike Rhode, was promoted to that position. Walters cannot, however, maintain a claim based on her non-promotion, because she did not file a timely charge of discrimination with the EEOC. Under Title VII, an administrative charge must be filed within 300 days of the discriminatory employment action. *See Speer v. Rand McNally & Co.*, 123 F.3d 658, 662 (7th Cir. 1997).

---

[1] Walters' response mistakenly indicates that Central States passed her over for promotion in February 1998. But it is clear from Walters' testimony that the promotion she was referring to was available in February 1997, not 1998. Walters Dep. at 99-100, 104; Pltf. Rule 56.1(a)(3) Resp. at ¶ 29.

2

Walters filed her EEOC charge of discrimination on June 2, 1998, a year and a half after she was passed over. Her claim based on the February 1997 promotion denial is thus time-barred.

Walters' EEOC charge was made well within 300 days of December 1997, so we can address the merits of that claim. Assuming, as Walters argues, that Brander's comment was sexual in nature, Walters' *quid pro quo* claim fails because she has not shown that a promotion was available. In December 1997, Rhode had his title changed from Home Market District Sales Manager to Cold Drink District Sales Manager as part of a reorganization. Walters seems to say that this was a promotion that she should have gotten, but the evidence establishes otherwise: Rhode's former position did not open up, his salary remained the same, and Walters admits she reported to the same person – Rhode – before and after his title change. Pltf. 56.1(b)(3)(B) Stmt. ¶67. Walters argues that Central States did promote Rhode in December because another employee, Llew Smith, was promoted to an account manager position during the reorganization. This does not indicate, however, that there was an open position into which Walters could have been promoted. Because Walters was not denied a tangible employment benefit within the limitations period, she cannot maintain a *quid pro quo* harassment claim. *Cf. Smith v. World Book-Childcraft International, Inc.*, 502 F. Supp. 96, 99 (N.D. Ill. 1980) (finding no prima facie case of age discrimination where it was undisputed that the position to which the plaintiff requested transferral was unavailable at the time of his request).

## COUNT 2
**Equal Pay Act**

The Equal Pay Act, 29 U.S.C. §206(d)(1), forbids employers from paying workers of one sex less than workers of the opposite sex for equal work. *Wollenburg v. Comtech Manufacturing*

*Co.*, 201 F.3d 973, 975 (7th Cir. 2000). To establish a prima facie case under the Act, Walters must show: (1) higher wages are paid to employees of the opposite sex, (2) these employees do equal work which requires equal skill, effort, and responsibility, and (3) they have similar working conditions. *Id.* Once a prima facie case is established, Central States has the burden of showing that the wage differential "stems from a seniority system, a merit system, a system which measures earnings by quantity or quality of production, or a differential based on any other factor other than sex." *Id.* at 976; *see also Dey v. Colt Construction & Development Co.*, 28 F.3d 1446, 1462 (7th Cir. 1994).

Walters says she made $7,000 less per year than her male counterpart, Don Piano, the only other Cold Drink Account Manager at Central States. However, "[e]ven if a man and woman are doing the same work for different pay, there is no violation if the wage difference stems from a factor other than gender." *Wollenburg*, 201 F.3d at 976 (citing *Lindale v. Tokheim Corp.*, 145 F.3d 953, 957 (7th Cir. 1998)). Central States has demonstrated that the wage difference here stems from Piano's greater level of experience. It is undisputed that Piano had twelve years more seniority than Walters. In *Wollenburg*, the court affirmed summary judgment on the plaintiff's Equal Pay Act claim because the defendant established that the male employee had years more supervisory experience than the plaintiff, and "experience is a legitimate, nondiscriminatory reason" for wage disparity. *Id.* at 976. Accordingly, we find no genuine issue of material fact as to the validity of Central States' explanation why Piano was paid more than Walters.

Except for the affidavit of Paul Quinn, Walters offers no further evidence to support her Equal Pay Act claim. Quinn, who was hired seven months before Walters but did not become an

4

account manager until 1997, says his base salary was "approximately $30,000 per year" in both 1996 and 1997. Walters' base salary was $2,500 less than that. According to Central States' pay records, however, while Quinn's *total* compensation (including incentive pay) was over $30,000 in both 1996 and 1997, his base salary was nowhere near that amount: his highest base salary would have been $26,000 in 1997 had he stayed on the entire year. Dfdt. Reply at 12-13; Supp. Aff. of John Douglas at ¶2. Thus, contrary to Walters' assertions, it appears that Central States paid Walters a higher base salary than it paid Quinn.

Quinn's affidavit does not create a genuine issue of material fact. Though Quinn undoubtedly would have access to records supporting his claim, he submitted no documentation confirming his "approximate" salary. Unsupported factual assertions (even in a sworn affidavit) do not necessarily create a genuine issue of material fact when those assertions are undermined by unambiguous records. *Cf. Hannon v. Turnage*, 892 F.2d 653, 660 n.8 (7th Cir. 1990) (plaintiff's own unsupported affidavit broadly stating that the defendant publicized his termination will "hardly create a genuine issue of material fact on this subject."); *Posey v. Skyline Corp.*, 702 F.2d 102, 105 (7th Cir. 1983) (an affidavit in which a company representative recounted that he had conspicuously posted a notice is not disputed by plaintiff's claims that he never saw the notice). Without more than Quinn's unsupported assertion, and in the face of Central States' documentary proof undercutting that assertion, Walters cannot maintain a claim under the Equal Pay Act; she has not provided evidence from which a jury could conclude that she was paid less than similarly situated male employees.

# COUNT 3
## Retaliation

Under 42 U.S.C. §2000e-3(a), it is unlawful for an employer to retaliate against an employee for having engaged in a protected activity under Title VII. If an employee complains of unlawful discrimination, and the employer fires him because of it, the retaliation claim is still valid even if the underlying charge lacks merit. *See Hamner v. St. Vincent Hospital and Health Care Center, Inc.*, __ F.3d __, No. 99-3086, 2000 WL 1202287, at *4 (7th Cir. Aug. 24, 2000). Under the *McDonnell Douglas* burden-shifting framework, Walters must first establish a prima face case of retaliation. *See Gonzalez v. Ingersoll Milling Machine Co.*, 133 F.3d 1025, 1035 (7th Cir. 1998) (retaliation claims are analyzed in the same way as any other Title VII case). To do this, she must show that she engaged in an activity protected by Title VII and suffered an adverse employment action, and that there was a causal link between these two events. *Id.*

Walters suffered an adverse employment action when she was terminated in September 1999. Before that, she had engaged in activities protected by Title VII: she complained to supervisors, filed an EEOC charge, and filed this lawsuit in September 1998. Having shown the first two elements of a prima facie case, Walters must offer evidence from which a jury could find a causal link between these protected activities and her termination. Central States says that Walters cannot show causation, as her lawsuit was pending for over a year before Central States fired her. *See, e.g., Juarez v. Ameritech Mobile Communications, Inc.*, 957 F.2d 317, 321 (7th Cir. 1992) (six month lapse of time tends to negate causal connection). We agree that the mere fact that Walters' termination came after her EEOC complaint does not, under these circumstances, tend to show causation.

6

There is, nevertheless, a fact issue as to causation. In August 1999, Walters complained to Matt White, the Peru Sales Center plant manager, that obscene sexual materials were on the shared network computer drive together with her personnel file. On August 25, White met with Walters concerning this complaint, at which time Walters expressed an interest in the Cold Drink District Sales Manager Position that had opened when Mike Rhode left the company. Walters says White told her she was "just going to have to give up all of this talk of discrimination and move forward." After White allegedly denied Walters' request for a follow-up meeting, she says she faxed a memorandum to Dan Bowling, Vice President of Human Resources, detailing her discrimination claim. Bowling says he does not recall receiving the fax. But Walters says she sent it, and 24 hours later she was terminated by White. According to a memorandum that Walters sent Bowling just after her termination, she asked White why she was being fired, and he said that he was "because of [her] activity in accounts and [her] inability to move forward." Pltf. Ex. 1 (memorandum of Sept. 2, 1999).

This evidence does not necessarily demonstrate that Central States terminated Walters because it had grown tired of her complaints, but the inference is a plausible one. Walters was told by White that she had to stop talking about give up her discrimination and "move forward," but she did not give up; she continued to complain, and one week later White fired her, specifically citing her failure to "move forward." Walters has a low burden at the prima facie case stage, *see Bellaver v. Quanex Corp.*, 200 F.3d 485, 493 (7th Cir. 2000), and though White's alleged statements may have been innocent, we are not entitled to weigh the evidence or to make credibility determinations at this stage of the litigation, as these are functions of the jury, not the court. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). This evidence is

7

sufficient to create a genuine issue of fact as to causation.

Because Walters can establish a prima facie case of retaliation, we turn next to pretext. Central States has offered a valid, non-discriminatory reason for Walters' termination: it received numerous customer and employee complaints concerning Walters' performance. The burden shifts back to Walters to demonstrate that Central States' reason was pretextual, which she can do with either direct or indirect evidence. *See Baron v. City of Highland Park*, 195 F.3d 333, 341 (7th Cir. 1999).

Walters arguably has direct (albeit circumstantial) evidence of causation: the juxtaposition of White's alleged statement that she should stop talking about discrimination and "move forward," and his alleged statement one week later that she was being fired because she was unable to "move forward." The same evidence used to establish a prima facie case can also be used to show pretext. *See, e.g., Smith v. Cook County*, 74 F.3d 829, 834 (7th Cir. 1996). And what is referred to in discrimination cases as "direct evidence" of discriminatory (or retaliatory) intent can come from circumstantial proof as well as the employer's admissions. *See generally Radue v. Kimberly-Clark Corp.*, 219 F.2d 612, 616 (7th Cir. 2000). We believe that a reasonable jury could find that White's comments are circumstantial evidence of an intent to retaliate.

A genuine issue exists on the matter of pretext even if we analyze the evidence pursuant to the indirect method. Indirect proof of discrimination comes from evidence showing that the employer's explanation for its actions is not worthy of credence, *see Reeves v. Sanderson Plumbing Products, Inc.*, ___ U.S. ___, 120 S. Ct. 2097, 2101 (2000), in other words, that Central States' reason was baseless, not the "real reason," or insufficient to warrant her termination. *Baron*, 195 F.3d at 341 (citing *Wolf v. Buss (America) Inc.*, 77 F.3d 914, 919 (7th

8

Cir. 1996)).

On August 31, 1998, White sent his superior a memo requesting permission to fire Walters. In the letter, White said that "recent events ... lead me to believe that [Walters] has several issues that are preventing her from being an effective Account Manager, as well as a valuable employee for the Central States Division." These included, White said, poor customer relations – six customers had asked not to work with her; poor employee relations – several employees had asked not to work with her; poor time management – focusing on other employees' performance rather than her own; and poor attitude – "discuss[ing] the past more often than the present or the future," and being "entrenched in history." White also noted that the sales and profit figures for Walters' customers were down.

Walters has tried to debunk White's claims in part. When asked in his deposition what "employees" had asked not to work with Walters, White named only Terry Koehler. Koehler denies that she complained about Walters and says that White is lying. In addition, Walters has produced an affidavit indicating that a representative of one of the customers to which White was apparently referring says that it is not true that the customer asked to have someone other than Walters handle their account. Other than this, however, Walters has no evidence *directly* refuting White's claims regarding customer complaints.

Neither side has addressed how the Court should deal with a situation like this one in which the employer offered several reasons for its actions and the employee is able to contradict some but not all of them. Walters seems to assume that if she undercuts one of the employer's reasons, that is enough to avoid summary judgment; Central States seems to assume that Walters loses unless she can knock down each and every one of its reasons. Neither party is correct. As

9

a general rule, the fact that an employee can call into question some of the employer's reasons does not defeat summary judgment if at least one reason stands unquestioned. *See, e.g., Wolf,* 77 F.3d at 920; *Russell v. Acme-Evans Co.,* 51 F.3d 64, 69 (7th Cir. 1995). In some circumstances, however, the employee may prevail even if she fails to cast doubt on all the proffered reasons: "[t]here maybe cases in which the multiple grounds offered by the defendant for the adverse action of the which the plaintiff complains are so intertwined, or the pretextual character of one of them so fishy and suspicious, that the plaintiff could withstand summary judgment." *Russell,* 51 F.3d at 70, *quoted in Wolf,* 77 F.3d at 920. In addition, later decisions by the Seventh Circuit have made it clear that what we are searching for is whether there is "one legitimate, nondiscriminatory reason [that] would have caused the company to dismiss the plaintiff," *Crum v. Board of Education,* 147 F.3d 535, 541 (7th Cir. 1998), in other words, whether the undisputed reason(s) given by the employer would have been enough standing alone to cause the plaintiff's dismissal. *See also Andreani v. First Colonial Bankshares Corp.,* 154 F.3d 389, 399 (7th Cir. 1998).

On the present record, the Court cannot conclude that the reasons given by White that Walters cannot directly contradict would have been enough by themselves to cause her dismissal. In addition, White's August 31 memo suggests that the grounds he relied upon were in fact intertwined (in the sense of being parts of a larger whole rather than independent bases for termination), and the matters that Walters has contradicted are significant enough to call into question White's credibility regarding the other matters he cited. Finally, Walters has some evidence that when customers complained about other account managers, Central States tried to work things out and did not simply assume (as she says they did with her) that the problem could

10

not be resolved. This evidence comes from Walters herself; she cites discussions with and by her superiors at sales meetings. The statements of Central States supervisory personnel on these matters are likely admissible against Central States pursuant to Federal Rule of Evidence 801(d)(2)(D), and even though Walters' testimony about the meetings might be considered "self-serving," that does not render her in any way incompetent to testify on these points. Evidence that the employer dealt more leniently with the problems of similarly situated employees outside the protected class can serve as evidence of pretext. *See, e.g., Sarsha v. Sears, Roebuck & Co.*, 3 F.2d 1035, 1042 (7th Cir. 1993).

In sum, there are genuine fact issues as to both causation and pretext which preclude entry of summary judgment on Walters' retaliation claim.

## COUNT 4
### Intentional Infliction of Emotional Distress

To prove a claim for intentional infliction of emotional distress under Illinois law, Walters must establish that (1) the conduct involved was extreme and outrageous, (2) the aggressor intended to inflict severe emotional distress or knew there was a high probability that such distress would result, and (3) the conduct in fact caused severe emotional distress. *McGrath v. Fahey*, 126 Ill. 2d 78, 85-86, 533 N.E.2d 806, 809 (1988). To meet the first element, the alleged conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of human decency." *Oates v. Discovery Zone*, 116 F.3d 1161, 1174 (7th Cir. 1997) (affirming summary judgment against employee making intentional infliction claim against employer) (citation omitted).

"[I]nsults, indignities, threats, annoyances, petty oppressions or trivialities," or acts that

11

are simply "inconsiderate, rude, vulgar, uncooperative, unprofessional and unfair," are not actionable under intentional infliction of emotional distress. *Id.* (citing *McGrath*, 126 Ill. 2d at 86, 533 N.E.2d at 809; *Pommier v. James L. Edelstein Enterprises*, 816 F. Supp. 476, 482 (N.D. Ill. 1993) (internal citations and quotations omitted)). For this reason, the circumstances surrounding employment disputes typically do not qualify as extreme and outrageous conduct. *Piech v. Arthur Andersen & Co.*, 841 F. Supp. 825, 831 (N.D. Ill. 1994) ("A claim for intentional infliction of emotional distress, however, requires more than what is required for sexual harassment."); *Welsh v. Commonwealth Edison Co.*, 306 Ill. App. 3d 148, 154, 713 N.E.2d 679, 684 (1999) ("in the absence of conduct calculated to coerce an employee to do something illegal, courts have generally declined to find an employer's retaliatory conduct sufficiently extreme and outrageous as to give rise to an action for intentional infliction of emotional distress.").

Walters' allegations of emotional distress are based primarily on the circumstances surrounding her termination. Am. Cplt. at ¶¶19, 20. She was escorted out of the building by police, was not allowed to collect personal items, and was threatened with prosecution for trespass if she re-entered the sales center. She also claims that Central States threatened her friends with termination and told others at the sales center that she was suicidal and unstable. Even if true, however, this conduct does not give rise to an action for intentional infliction of emotional distress. *See, e.g., Harriston v. Chicago Tribune*, 992 F.2d 697, 703 (7th Cir. 1993) (conduct not extreme and outrageous under Illinois law where black employee was prevented from supervising white employees, denied participation in benefit programs, forced out of management, had her telephone rigged with an eavesdropping device, falsely accused of poor work performance and then reprimanded, threatened with discipline, and excluded from office

social outings); *Brackett v. Galesburg Clinic Association*, 293 Ill. App. 3d 867, 870, 689 N.E.2d 406, 408-09 (1997) (employee with forty-four years of service was dismissed without notice contrary to employer's policy, ordered to leave premises, prevented from collecting personal items, and others were told her behavior was "really bad"; not sufficient to support claim). *See also Strasburger v. Board of Education, Hardin County Community Unit School Dist. No. 1*, 143 F.3d 351, 358 (7th Cir. 1998) (relying on *Brackett* to dismiss intentional infliction of emotional distress claim). Like the plaintiffs in *Harriston* and *Brackett*, Walters may have been subjected to indignity and humiliation. But as a matter of law, defendants' conduct was not beyond the bounds of human decency, and thus it cannot serve as the basis for a viable claim of intentional infliction of emotional distress.

### Miscellaneous Discrimination Claims

In her EEOC charge and complaint, Walters says she was subjected to different terms and conditions of employment because of her sex. *See* 42 U.S.C. §2000e-2(a)(1). She has no direct proof of such disparate treatment, and the general paradigm of indirect proof requires that she make her case with evidence that (1) she belongs to a protected class; (2) her qualifications or performance met her employer's legitimate expectations; (3) she was subjected to an adverse employment action; and (4) similarly situated male employees were treated more favorably. *See McDonnell Douglas*, 411 U.S. at 802-03; *Lenoir v. Roll Coater, Inc.*, 13 F.3d 1130, 1132 (7th Cir. 1994). Central States claims Walters cannot make out a prima facie case of disparate treatment under *McDonnell Douglas* because she did not suffer materially adverse employment actions. We agree.

"A materially adverse change might be indicated by termination of employment, a

13

demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, or significantly diminished material responsibilities." *Crady v. Liberty National Bank & Trust Co. of Ind.*, 993 F.2d 132, 136 (7th Cir. 1993). Although "adverse employment action" has been defined quite broadly in our circuit, "not everything that makes an employee unhappy is an actionable adverse action." *Smart v. Ball State University*, 89 F.3d 437, 441 (7th Cir. 1996). "[M]inor and trivial employment actions" and employment actions that merely "inconvenience the employee" are not actionable either. *Daulo v. Commonwealth Edison*, 938 F. Supp. 1388, 1397 (N.D. Ill. 1996).

Walters claims she was denied a desk, computer, office, and keys to certain accounts, while her male counterpart, Don Piano, possessed all of these things. There is no indication, however, these were anything more than mere inconveniences, and therefore cannot form the basis of an employment discrimination claim. *See Crady*, 993 F.2d at 136 ("a materially adverse change in the terms and conditions of employment must be more disruptive than a mere inconvenience or alteration of job responsibilities."). Walters also says that unlike her male counterparts, she was disciplined for "such trivial things as 'high-fiving' another female employee and poor penmanship." For the penmanship infraction, Walters was required to endure a half-hour counseling session. Pltf. Resp. Mem. at 10. Even if undeserved, reprimands like these do not constitute adverse action sufficient to give rise to a Title VII claim. *Smart*, 89 F.3d at 442.

Walters also generally avers that Piano was afforded greater incentives than her, and that she was burdened with considerably more work than him. But Walters has offered no foundation for her claimed knowledge of Piano's responsibilities or activities that occurred outside her

14

presence. Even if true, the consequences of these actions would not constitute adverse employment action within the meaning of the law. Without more, the Court cannot find a triable issue as to the existence of an adverse employment action. Summary judgment is therefore granted as to Walters' disparate treatment claims.

This leaves a sexual harassment hostile work environment claim, which Walters raises for the first time in her summary judgment papers under the guise of a "discrimination" heading:

> Similarly, there is overwhelming evidence that Plaintiff endured years of discriminatory terms and conditions of employment, along with the other female employees at the Coke facility. Females were referred to as "dumb cunts" and "dumb bitches", and were told that women don't belong in the beverage business, and that the females that were employed by Defendant were merely tokens. Plaintiff's supervisor, Mike Rhode, testified that the discriminatory atmosphere interfered with Plaintiff's ability to perform her job.

Pltf. Resp. to Sum. Jdgt. Mot. at 3; *see also* Pltf. Mem. at 8-9. This claim was not asserted in Walters' EEOC charge, nor was it raised in her amended complaint, either directly or inferentially. Indeed, the only "sexual harassment" claim Walters asserted was one for *quid pro quo* sexual harassment. Because Walters alleged nothing in her complaint or EEOC charge that would support a hostile work environment claim, Central States had no notice Walters was bringing such a claim until she filed her response to summary judgment. *Cf. Ryan v. Illinois Dept. of Children and Family Services*, 185 F.3d 751, 764 (7th Cir. 1999) (although a specific legal theory need not be pled, allegations must give notice of a legally sufficient claim). We therefore find that Walters has waived her sexually hostile work environment claim and is precluded from raising that claim at trial. *See Oates*, 116 F.3d at 1168-69 (harassment claim cannot be raised for the first time on summary judgment; decision to exclude claim from EEOC

15

charge and complaint precludes plaintiff from raising the issue at trial); *Cheek v. Peabody Coal Co.*, 97 F.3d 200, 202 (7th Cir. 1996) (upholding dismissal of sexual harassment claim as waived where claim was omitted from plaintiff's EEOC charge and complaint). However, to the extent Walters' hostile work environment evidence might be relevant with regard to her one surviving claim (retaliation), our ruling does not preclude her from seeking to offer such evidence at trial. *See, e.g., Utomi v. Cook County*, No. 98 C 3722, 1999 WL 787480, at *2 (N.D. Ill. Sept. 24, 1999) (explaining that acts barred by the applicable limitations period may be admissible at trial for background purposes) (citing *Hennessy v. Penril Datacomm Networks, Inc.*, 69 F.3d 1344, 1349 (7th Cir. 1995)).

## Conclusion

Central States' motion for summary judgment is granted as to Counts 1, 2, and 4 but is denied as to Count 3 (Walters' retaliation claim). Central States' motion to strike Walters' statement of undisputed facts is also denied. The final pretrial order in conformity with Local Rule 16.1 remains due on September 30, 2000, and the case remains set for trial on January 8, 2001. A final pretrial conference date will be set in due course.

Dated: September 6, 2000

MATTHEW F. KENNELLY
United States District Judge