# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 98 C 4526 | **DATE** | 10/16/2001 |
| **CASE TITLE** | Walters vs. Central States Coca Cola | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Plaintiff's motion for relief (97-1), her motion for leave to amend motion for relief, which the Court has treated in part as a separate motion for relief from judgment (102-1), and her motion to set aside, or for relief from judgment (104-1 & 2) are denied. Plaintiff's motion to amend civil docket (106-1) is granted in part: the Clerk directed to add to the docket the following entry for 4/17/01: "Defendant's motion for leave to amend affirmative defenses is entered and continued to 5/8/01; plaintiff is to advise the Court of what discovery she believes the new affirmative defense would require." Costs are taxed in the amount of $3,487.85 in favor of defendant.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | OCT 2 2 2001 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 109 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | FOR DOCKETING 01 OCT 19 PM 1: 50 | | |
| OR | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

PATRICIA WALTERS,                               )
                                                )
                        Plaintiff,              )
                                                )
vs.                                             )   Case No. 98 C 4526
                                                )
CENTRAL STATES COCA-COLA                        )
BOTTLING COMPANY,                               )
 division of Coca-Cola Enterprises,             )
and Johnston Coca Cola Bottling Group,          )
                                                )
                        Defendant.              )

## MEMORANDUM OPINION AND ORDER[1]

MATTHEW F. KENNELLY, District Judge:

After a bench trial, the Court found in favor of defendant on plaintiff's claims that she had been discharged in retaliation for complaining about gender discrimination, in violation of Title VII of the Civil Rights Act of 1964, and in retaliation for making a complaint about unpaid overtime, in violation of the Fair Labor Standards Act. Plaintiff, who tried the case *pro se*, has filed several motions seeking reconsideration, a new trial, and/or relief from judgment.

1.      **Background**

Judgment was entered on the docket on August 14, 2001. On August 28, 2001, plaintiff served and filed a motion entitled "motion for relief from judgment." This was a timely motion under Federal Rule of Civil Procedure 59(e), which in combination with Rule 6(a) gave plaintiff

---

[1] The Court has used the caption that plaintiff used in her second amended complaint. As will become clear later, the identity of the defendant(s) is a matter of dispute. The Court's use of this particular caption, or of the singular "defendant" in the body of this opinion, does not indicate its determination of that dispute.

until that very date to serve her motion. On September 17, 2001, plaintiff served and filed a motion seeking leave to amend her August 28 motion. This motion included new grounds for relief not asserted in the timely August 28 Rule 59(e) motion. To be considered under the standards applicable to Rule 59(e) motions, a motion must be served within the time provided under Rule 59(e). *See United States v. Deutsch*, 981 F.3d 299, 301 (7th Cir. 1992). Accordingly, to the extent it states additional grounds, plaintiff's motion to amend her August 28 motion is denied; however, the Court will consider the motion as a motion for relief from judgment under Rule 60(b). *Id.* (As it turns out, this makes no difference, as plaintiff's motion is without merit whether considered under Rule 59(e) or Rule 60(b).)

Plaintiff also served and filed, on September 27, 2001, a motion clearly denominated as a Rule 60(b) motion, and the Court will consider it as such. Finally, plaintiff filed on October 5, 2001 a motion entitled "second motion to amend civil docket," claiming that the docket is in error or is missing information in various respects.

## 2.  Plaintiff's Rule 59(e) motion (filed August 28, 2001)

We begin with plaintiff's Rule 59(e) motion, filed on August 28, 2001. The purpose of a Rule 59(e) motion is to draw the trial court's attention to matters such as newly discovered evidence or a manifest error of law or fact. "The rule essentially enables a district court to correct its own errors, sparing the parties and the appellate courts the burden of unnecessary appellate proceedings." *Russell v. Delco Remy Division of General Motors Corp.*, 51 F.3d 746, 749 (7th Cir. 1995).

First, plaintiff may not use a post-trial motion to introduce evidence (either her own testimony or the testimony, affidavits, or depositions of others) that was reasonably available to

her at the time of trial but that she either chose not to introduce or neglected to offer. *E.g., Retired Chicago Police Association v. City of Chicago,* 76 F.3d 856, 867 (7th Cir. 1996). This is the case with all of the additional evidence plaintiff offers. *See* Pltf. Rule 59(e) Mem., pp. 2-3, 5 n.5, 15, and elsewhere. Accordingly, the Court will not consider this additional evidence.

Second, plaintiff asks that the depositions of Vincent Stone and Dan Bowling be made a part of the record. *See* Pltf. Rule 59(e) Motion, ¶3a. Because this was a bench trial, rather than having the depositions read in open court, the Court asked the parties to submit the transcripts as exhibits. The Court reviewed the deposition transcripts and considered them in making its findings and conclusions. The transcripts were marked as exhibits and admitted in evidence, and they are therefore part of the record.[2] There is no need to add them to the trial transcript, the purpose of which is to record what happens in open court.

Third, plaintiff argues that the Court erred in eliciting from witness Ted Urbanski testimony that employees were avoiding plaintiff because they were afraid of becoming involved in her lawsuits and/or claims, suggesting that the testimony was inadmissible hearsay and arguing that in eliciting this testimony, the Court was tilting the scales in favor of defendant. Pltf. Rule 59(e) Mem. at 4-5. The testimony was admissible to show the co-workers' state of mind. Moreover, this testimony was in no way prejudicial to plaintiff – indeed it was evidence that tended to support her retaliation claim. In justifying its termination of plaintiff, defendant relied partly on supposed problems she had getting along with and working with co-workers. Evidence that co-workers were shunning plaintiff because of her claims against management, if combined

---

[2] As the Court advised the parties at the close of the trial, they are to keep custody of their own trial exhibits. In the event of an appeal, they will be asked by the Clerk to submit them for inclusion in the record.

3

with evidence that management knew this was so, would have supported plaintiff's contention that she was terminated in retaliation for her claims against the company.

Fourth, plaintiff argues generally (in this and her other motions) that the Court was biased against her. She appears to see bias in virtually everything that the Court did, including the fact that we did not ask the parties to submit proposed findings of fact and conclusions of law. Pltf. Rule 59(e) Mem. at 7. The short answer is that the Court was and is in no way biased against plaintiff or her lawsuit. With regard to the specific issue plaintiff raises, there is no rule that requires the filing of proposed findings and conclusions. In this case, the Court excused the parties from doing so on the belief that the more pretrial materials the parties had to prepare, the more a *pro se* plaintiff would be disadvantaged. The lack of proposed findings and conclusions in no way hindered plaintiff in presenting her case or her theories to the Court at or before trial. And though she now contends that defendant came up with a new theory at trial, she made no objection to this during the trial, and any such objection has been waived.

Next, plaintiff complains with regard to the order of proof. Both sides proposed to call several of the same witnesses, some of whom lived outside Chicago. The Court determined to have each such witness testify only once, so as to avoid a return trip to court for the defense case. Plaintiff contends that she was disadvantaged by this, and she argues that when defendant was questioning these witnesses for purposes of the defense case (as opposed to cross-examining them as plaintiff's witnesses), the Court erroneously permitted defendant to use leading questions. *See* Pltf. Rule 59(e) Mem. at 8-9. The Court rejects these arguments. First of all, Federal Rule of Evidence 611 specifically permits the Court to control the order of proof. The Court is not persuaded that it committed any error in having each of the joint witnesses called

4

just once. This served the convenience of everyone – the witnesses, the parties, and the Court. Second, plaintiff did not object to any allegedly leading question that was outside the scope of her direct examination of any such witnesses and has therefore waived the issue. Her claim that she assumed she should not object because the Court had prejudged the point during the testimony of Kathy Pijanowski , *see* Pltf. R. 59(e) Mem. at 9, does not hold water. The Court's comments during Pijanowski's testimony (cited at pp. 8-9 of plaintiff's memorandum) concerned only the sequence in which defendant would conduct: (a) its cross-examination of the witness on the subjects plaintiff had raised, and (b) its direct examination of the witness on subjects defendant wanted to raise. Those comments in no way hinted that plaintiff should not object to leading questions or that the Court would have overruled those objections. Finally, plaintiff does not identify any way in which she was prejudiced by the alleged error. This argument does not provide a basis for vacating the judgment or altering the Court's decision.

The remainder of plaintiff's motion primarily consists of a series of arguments about the weight and effect of the evidence introduced at trial, leading generally to the claim that the Court erred in its findings and conclusions. *See* Pltf. Rule 59(e) Mem. at 3-4, 5-6, 7-8, 10-15. The Court fully considered the evidence when it made its findings and conclusions, it has again reviewed the evidence in light of plaintiff's arguments, and it is not persuaded that it erred.

For these reasons, the Court denies plaintiff's "motion for relief."

## 3. Plaintiff's first Rule 60(b) motion (filed September 17, 2001)

As explained earlier, the Court is treating plaintiff's "motion for leave to amend motion for relief from judgment or order," filed on September 17, 2001, as a motion for relief from judgment under Federal Rule of Civil Procedure 60(b). Rule 60(b) is "an extraordinary remedy

5

granted only in exceptional circumstances." *Rutledge v. United States,* 230 F.3d 1041, 1052 (7th Cir. 2000).

Several of the arguments made in this motion concern alleged errors by the Court during the course of the trial. A Rule 60(b) motion is not a proper mechanism for addressing trial errors, *see, e.g., Russell v. Delco Remy Division of General Motors Corp.,* 51 F.3d 746, 749 (7th Cir. 1995), at least not without a showing of one of the grounds set forth in Rule 60(b)(1)-(6), which plaintiff has not done. Plaintiff also reargues in this motion some of the points addressed in her Rule 59(e) motion. The Court rejects these arguments for the reasons previously stated.

The primary new issue raised in the September 17 motion concerns plaintiff's withdrawal of her jury demand on February 23, 2001. *See* Pltf. Mot., ¶¶16-19. On that date, the Court held a telephone conference with plaintiff and counsel for defendant. During the conference, plaintiff advised that she wished to withdraw her jury demand and have a bench trial. The Court entered an order reflecting this following the conference.

Among other things, plaintiff complains that the telephone conference held on February 23 was not on the record. To explain this, some background is needed. At the time the case was originally filed, plaintiff was represented by counsel. Over time, she had three groups of lawyers (John Beal and Linda Kagan, who withdrew in December 1999; James Lannon and Christopher Henson, who withdrew in August 2000; and Laurie Wasserman, who withdrew in November 2000), but she ultimately chose to proceed *pro se*. Plaintiff lives in or near Ottawa, Illinois, which is over 80 miles from the courthouse, and defendant's primary counsel are in Nashville, Tennessee. As a convenience and accommodation to both sides, the Court permitted them to participate in status conferences via telephone.

6

The status conferences that were held in open court were conducted on the record. The February 23, 2001 telephone conference, however, was not conducted in open court and was not on the record. The Court scheduled the telephone conference in an order dated February 11, 2001 that dealt with various matters: with regard to the February 23 conference, the order stated that "[t]he court will conduct a conference call at 11:00 a.m. on 02/23/01 to set dates for the trial and filing the final pretrial order. Defendants' counsel are directed to set up the call." *See* Order dated Feb. 12, 2001. Because the expected purpose of the conference call was simply to schedule dates, and the call was not to be held in open court, the Court did not conduct the conference on the record, nor was it required to do so under 28 U.S.C. §753(b), the statute cited by plaintiff.

During the February 23 telephone conference, plaintiff advised the Court and defense counsel that she wanted to have a bench trial rather than a jury trial. The Court made inquiry of plaintiff to determine whether she was certain that she wanted to waive her jury demand and whether she understood what she was doing. The Court then set a trial date, dealt with other scheduling matters, and terminated the conference. Following the conference, the Court entered an order which stated, in pertinent part, "[t]elephone conference held. Plaintiff withdraws her jury demand. Bench trial set to 10:00 a.m. on 7/30/01." *See* Order dated Feb. 23, 2001.

Plaintiff now hints at a contention that she did not actually withdraw her jury demand. *See* Pltf. Mot., ¶19. That is a preposterous claim. First of all, there was no ambiguity about what plaintiff said in the telephone conference. Even if there had been, plaintiff received the Court's February 23, 2001 order stating that she had withdrawn her jury demand and that a bench trial would be held, and at no time did she express either an objection to that order or a desire to have

a jury trial. Nor, when the trial began without a jury, did plaintiff make an objection, express any concern, or indicate a wish for a jury. If plaintiff had actually wanted a jury, the Court has no doubt that she would have said so: from the Court's observation of plaintiff prior to and during the trial, she is intelligent, sophisticated, and not at all reticent about speaking her mind or making her views known. In sum, there is no doubt that plaintiff knowingly and intelligently withdrew her jury demand.

Next, plaintiff appears to object to the fact that the final pretrial conference held in chambers on July 25, 2001 was not conducted on the record. *See* Pltf. Mot., ¶¶20-21. Plaintiff obviously knew this at the time; she was in chambers, along with counsel for defendant, and it was patently obvious that no court reporter was present (and plaintiff did not request one). It is common to hold pretrial conferences in chambers, and there is no requirement that they be recorded. *See* 28 U.S.C. §753(b) (listing proceedings to be recorded as matters held in open court and "such other proceedings as a judge of the court may direct" or as requested by any party). The primary purpose of the conference was to discuss procedural issues concerning the trial. The Court's written order concerning the pretrial conference encompassed the rulings that the Court made on motions that had been filed. *See* Order of July 29, 2001. It is true that the order did not reflect the Court's statement that witnesses named by both sides would be called only once (*see* related discussion *supra* at 4-5), but there was no need to do so, as that was not a contested issue at the pretrial conference, and in any event the Court made this clear on the record at trial. On a related point, plaintiff claims that the Court "fail[ed] to provide written and/or oral direction on the handling of witnesses" and that this impaired her right to a fair trial. *See* Pltf. Mot., ¶¶24, 27. The Court disagrees; adequate oral direction was given, and plaintiff

has failed to point out any specific instance in which the fairness of the trial was impaired (she cites generally the testimony of Kathy Pijanowski, *see id.*, ¶27, but here as before she does not identify any particular questions or answers that she says were unfairly prejudicial). Nor was the Court "confused" at trial, *see id.*, ¶¶25-26, regarding the issue of the sequence of proof.

The next set of issues concerns plaintiff's retaliation claim under the Fair Labor Standards Act. Following plaintiff's December 2000 decision to proceed *pro se,* she filed a new lawsuit, Case No. 01 C 2576, which was assigned to Judge Blanche Manning. In that case, plaintiff made two claims under the FLSA: that she was owed overtime pay, and that she was terminated in retaliation for asserting her FLSA rights. Prior to trial, defendant sought to consolidate the entire FLSA case with the Title VII case for purposes of trial. The Court declined this request because of the apparent lack of overlap between plaintiff's claim for overtime pay and the issues remaining for trial in the Title VII case. The Court advised the parties, however, that it was willing to try the FLSA retaliation claim together with the Title VII retaliation claim because the two had significant factual overlap. Plaintiff ultimately filed a second amended complaint, adding her FLSA retaliation claim. That claim was tried along with the Title VII claim and resulted in a finding in favor of defendant.

Evidently there is now some dispute over whether plaintiff can maintain her FLSA retaliation claim before Judge Manning. *See* Pltf. Reply, p. 8 & Ex. A. Defendant says that it was clear from the parties' discussions before this Court that plaintiff was going to dismiss or withdraw that part of her complaint before Judge Manning. *Id.,* Ex. A. The Court does not recall this being mentioned, but that should make no difference. A party is not entitled to try the same claim twice. Plaintiff's FLSA retaliation claim was heard on the merits. Though the *res judicata*

9

effect of this Court's ruling on the FLSA retaliation claim is of course up to Judge Manning to decide, there is no question that this Court entered a judgment on the merits of that claim.

Plaintiff appears to argue that she was prevented from having a fair trial on her FLSA retaliation claim because she was unable to conduct discovery on that claim. *See* Pltf. Mot., ¶22. The fact of the matter is that plaintiff ultimately agreed to have her FLSA claim tried together with her Title VII claim. Further, she does not identify any way in which she was harmed. The FLSA retaliation claim, like plaintiff's Title VII retaliation claim, concerned the circumstances of and reasons for her discharge. She was able to fully examine those matters with witnesses whom she deposed both before and after she made the FLSA retaliation claim, including at least three witnesses identified by defendant whom plaintiff deposed after filing that claim. *See* Dfdt. Response, p. 7. She also served written discovery requests in the FLSA case, which defendant answered prior to trial in the consolidated case. Plaintiff suffered no unfair prejudice.

Plaintiff also argues that the Court erred in denying plaintiff's request for discovery at the time defendant was permitted to amend its affirmative defenses to add a "mixed-motive" defense. *See* Pltf. Mot., ¶14. The Court disagrees. At the time defendant made the request to amend, plaintiff argued that she would be prejudiced unless she was permitted to conduct additional discovery. The Court gave her an opportunity to make a showing in this regard. She failed to do so. In any event, the mixed-motive defense ended up being a non-issue in the case. The issue of mixed-motive comes into play only when the plaintiff establishes that an impermissible criterion impacted the challenged employment decision (in this case, her termination); the defense permits the defendant to try to show that it would have made the same decision in any event. *See generally Speedy v. Rexnord Corp.*, 243 F.3d 397, 401 (7th Cir.

10

2001). But in this case plaintiff failed to show that retaliation played any role at all in her termination. Thus the mixed-motive defense never came into play.

Next, plaintiff argues that during the trial the Court evinced a bias in favor of defendant in a number of its rulings. *See* Pltf. Mot., ¶¶28-32. She has failed to provide a basis justifying relief under Rule 60(b) for these alleged trial errors, which she could have challenged at trial but did not. But even if the issue is properly considered under Rule 60(b), plaintiff has failed to support her claim of bias and has made no showing of prejudice. The Court's questions to witnesses that plaintiff cites were either aimed at getting to the point without further ado, *see* Pltf. Ex. E, p. 258, or at clarifying matters that were unclear to the Court. *See* Pltf. Ex. F, p. 285 (which as noted earlier elicited testimony that tended to support plaintiff's retaliation claim) & Ex. I, pp. 200-02. Plaintiff complains that the Court "made objections" for defendant but not for plaintiff, but at one occasion cited by plaintiff for another point, the Court cut off a line of questioning by defense counsel even though plaintiff had not objected. *See* Pltf. Ex. Y, p. 152. Plaintiff correctly points out that during the testimony of Mike White, the Court barred a question that she had made even though defendant did not object. *See* Pltf. Ex. X, p. 545. The question was argumentative and improper. Moreover, plaintiff was in no way prejudiced by being precluded from asking it: the Court did not hinder her from posing proper questions to White to attempt to establish his lack of credibility or from arguing in closing argument that White could not be believed. When the Court precluded a question of Anita Linneman by plaintiff in the absence of an objection, *see id.*, p. 619, it was because Linneman had already answered the question. Finally, when the Court precluded a question by plaintiff about whether it was possible that a witness had heard something from a particular person, *see* Pltf. Ex. E, p.

11

262, it did so because the question was speculative and frankly pointless, in light of the witness' prior testimony and his statement that "anything is possible." Again, plaintiff was not prejudiced in any way.

Plaintiff also makes a series of arguments that various findings and conclusions made by the Court were erroneous. *See* Pltf. Mot., ¶¶33-37, 43. These claims are either too general to evaluate or simply restate arguments that plaintiff has made elsewhere in one form or another. The Court rejects all these arguments. The Court likewise denies plaintiff's request to add evidence to the record that she did not bring to the Court's attention during the trial. *See* Pltf. Mot., ¶¶41 (exhibits that defendant did not use), 42 (defendant's summary judgment submission), 43 (Matt White's deposition). A Rule 60 motion "cannot be used to present evidence that with due diligence could have been introduced before judgment, or to put forth evidence that is not material or that would likely not change the result at trial." *National Organization for Women, Inc. v. Scheidler*, Nos. 99-3076, 99-3336, 99-3891, 99-3892 & 01-2050, 2001 WL 1158973, at *18 (7th Cir. Oct. 2, 2001) (citations omitted).[3]

Finally, plaintiff requests that the Court direct the court reporter to provide her with her tape recordings of the proceedings so that plaintiff can check the transcript for errors. She has failed to make a showing of need for the recordings. The single specific instance of a supposed error that plaintiff cites, *see* Pltf. Mot., ¶45 & Ex. Z, appears from the Court's recollection and notes to be an accurate transcription of plaintiff's summary explanation of a chart that she proposed to admit as an exhibit. Plaintiff's request is denied.

---

[3] The Court likewise denies plaintiff's request to reconsider its summary judgment ruling. Pltf. Mot., ¶¶48-51.

12

### 4. Plaintiff's second Rule 60(b) motion (filed September 27, 2001)

The primary issue raised in plaintiff's second Rule 60(b) motion, filed on September 27, 2001, concerns the identity of the defendant. The original complaint in this case, filed by an attorney on behalf of plaintiff, named as defendant "Central States Coca-Cola Bottling Company," and identified it as "a division of Coca-Cola Enterprises, a Delaware corporation." Cplt. ¶3. Plaintiff's amended complaint, filed by an attorney on her behalf in February 2000, appears to name a second defendant, "Johnson Coca-Cola Bottling Group, Inc." The preamble to the complaint refers to "defendants" in the plural, and paragraph 3 likewise appears to identify two separate defendants. The caption tends to confirm this reading; it reads as follows:

```
PATRICIA WALTERS,                    )
                                     )
            Plaintiff,               )
                                     )
    v.                               )    No. 98 C 4526
                                     )
CENTRAL STATES COCA-COLA             )
BOTTLING COMPANY, a division of      )
Coca-Cola Enterprises, and JOHNSTON  )
COCA-COLA BOTTLING GROUP, INC.       )
                                     )
            Defendants.              )
```

The motion to file the amended complaint – an agreed motion signed by counsel for both sides – stated in its preamble that it was filed on behalf of "Plaintiff PATRICIA WALTERS, and Defendant JOHNSTON COCA-COLA BOTTLING GROUP, INC. d/b/a CENTRAL STATES COCA-COLA BOTTLING COMPANY," and the signature line for defense counsel stated that he was signing for "JOHNSTON COCA-COLA BOTTLING GROUP, INC., d/b/a CENTRAL STATE COCA-COLA BOTTLING COMPANY, Defendant." Neither party flagged for the

Court, however, any indication that a defendant was being added or that the identity of the defendant was being changed, and no summons was requested or issued for any new defendant.

The answer to the amended complaint (as well as the amended and second amended answers) was filed by "the Defendant, Central States Coca-Cola Bottling Company." The response to paragraph 3, cited earlier, included the following:

> Plaintiff's employer is Johnston Coca-Cola Bottling Group, Inc. ("Johnston"), a Delaware corporation, doing business in Illinois as Central States Coca-Cola Bottling Company ("Central States"). Johnston is a wholly owned subsidiary of Coca-Cola Enterprises, Inc. ("CCE"). CCE is not Plaintiff's employer. ...

Though summons was never served on Johnston Coca-Cola Bottling Group, Inc., it seems clear that it was named as a defendant in the amended complaint. The second amended complaint, filed on the day trial began for the purpose of conforming the pleadings to the decision to include plaintiff's FLSA retaliation claim as part of the trial, does not appear to withdraw Johnston as a defendant. Though the caption referred to "defendant" in the singular, paragraph 3 identified Johnson, Central States, and Coca-Cola Enterprises, closing with an allegation that the three "comprised a single employer (herein "Defendant") of Plaintiff in that they operated as an integrated enterprise." Though Johnston was never served with a separate summons, the record, fairly construed, reflects that Johnston (through its business unit Central States) acted as a defendant, defended the litigation, and would have been bound by a judgment if plaintiff had prevailed.

The parties seem to agree that Central States Coca Cola is not a legal entity; rather it is or was a business unit of another company. This issue first came to the Court's attention during the trial. When the Court inquired, defendant's counsel represented that Central States Coca Cola

14

was "a division of Johnson Coca-Cola Bottling Group, Inc.," which merged into a company called "Coca-Cola Enterprises" in January 2000. Tr. 273. Plaintiff responded that "Coca-Cola Enterprises was my employer. It's who I was told employed me, and through amended complaints and representations of Coca-Cola they refuse to admit that Coca-Cola Enterprises was my employer. Johnson Coca-Cola was the name on a check to me, and I think that it's appropriate that the appropriate defendant gets to be part of the trial." *Id.* The Court, concerned that a *pro se* plaintiff was trying a case against the wrong defendant, asked defense counsel whether he was planning to argue that plaintiff had sued the wrong defendant. *Id.* 274. Defense counsel said no, and upon inquiry he further represented that if plaintiff prevailed the named defendant was financially able to pay the judgment. *Id.* The Court then inquired, "Does it matter anymore?" – indicating that it did not appear that plaintiff could possibly be harmed by the apparent misnomer. Plaintiff did not respond or object. *Id.*

The exchange at trial between defendant, the Court, and plaintiff quoted above can only be interpreted as having benefitted plaintiff – through the Court's questioning, she was protected against the possibly disastrous consequences of her or her attorney's error[4] – but characteristically plaintiff now sees this as having harmed her in some way. She has failed to explain how. Indeed, what it appears plaintiff is trying to do is to use the apparent mistake that she or her attorney made as a way to get herself another bite at the apple – she seems to want a new crack at the "right" defendant. It is too late to raise this argument. If plaintiff sued the wrong defendant, the mistake cannot be laid at anyone's feet other than her own. She certainly

---

[4] The "disastrous consequence" being the effect of not learning until after the statute of limitations had run that she possibly failed to sue the proper defendant.

15

could be expected to know who her employer was, and if there was any uncertainty or ambiguity she had three full years between the filing of her complaint and the time of trial (during most of which she was represented by counsel) in which to clear it up. Moreover, the trial would not have differed by one iota if plaintiff had named the "right" defendant. She received a full hearing on the merits of her claim and lost. She cannot escape the judgment that was entered against her – nor, in the Court's estimation, can she escape its preclusive effect – by saying that there was no "real" defendant before the Court.

Plaintiff also objects to the fact that Anthony Swafford, an attorney from the firm of defendant's principal counsel, signed discovery responses and appeared at depositions even though he did not file an appearance. Discovery responses are not filed with the Court, *see* N.D. Ill. Local Rule 26.3, and depositions are not conducted under the Court's supervision. There is no conceivable way in which plaintiff was harmed by Swafford's failure to file a notice of appearance. This argument provides no basis for overturning the judgment.

For these reasons, the Court denies plaintiff's second Rule 60(b) motion.

### 5. Plaintiff's second motion to amend the docket

Plaintiff's second motion to amend the docket concerns seven docket entries that plaintiff believes are erroneous. The first three concern the purported adding of Johnson Coca-Cola Bottling Group as a defendant. Based on the discussion earlier, the Court does not believe that these entries are erroneous.

The docket does not include an entry for April 17, 2001, and plaintiff is correct that it should. On that date the Court entered and continued defendant's motion for leave to amend affirmative defenses to May 8, 2001 and directed plaintiff to advise the Court of what discovery

16

she believed the new affirmative defense would require.

The entry that plaintiff wants to include for July 25 is for all practical purposes covered in the entries for July 29 and July 31, and no change is needed.

Finally, defendant in fact filed a bill of costs on September 5, 2001. The reason that this is not yet on the docket is that the Clerk's practice in this District is to forward the original of the bill of costs to the judge presiding over the case. Presumably the reason for this is that the bill of costs includes (at the bottom) space for an order taxing costs; the judge's Courtroom Deputy fills in the blanks of this order following the Court's ruling, and at that point the original is sent to the Clerk for docketing. Again, no change to the docket is needed.

6.  **Defendant's bill of costs**

In its bill of costs, defendant seek to recover for the costs of serving subpoenas on several trial witnesses. However, these witnesses either were not called, or were subpoenaed and called by plaintiff. Defendant has offered no justification for its recovery of these amounts.

Plaintiff's only objection to defendant's requested deposition costs concerns the appearance of attorney Swafford at the depositions. That objection provides no basis for denying recovery of these costs.

Defendant also seeks to recover its in-house copying costs for an extra copy of certain depositions. That was a matter of convenience, not necessity. Recovery is denied.

For these reasons, the Court directs the Clerk to tax costs in favor of defendant in the amount of $3,487.85.

## Conclusion[5]

For the reasons stated above, plaintiff's motion for relief [Docket Item 97-1], her motion for leave to amend motion for relief, which the Court has treated in part as a separate motion for relief from judgment [102-1], and her motion to set aside, or for relief from judgment [104-1 & 2] are denied. Plaintiff's motion to amend civil docket [106-1] is granted in part: the Clerk is directed to add to the docket the following entry for April 17, 2001: "Defendant's motion for leave to amend affirmative defenses is entered and continued to May 8, 2001; plaintiff is to advise the Court of what discovery she believes the new affirmative defense would require." The Clerk is directed to tax costs in favor of defendant in the amount of $3,487.85.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: October 16, 2001

---

[5] The Court has considered all of plaintiff's remaining arguments in her motions and memoranda and has concluded that they are without merit.

18